# 2006 DTA 5

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE FAJARDO
PANEL XI**

MIGUEL ÁNGEL·GARCÍA NIEVES, *ET ALS*.
Recurridos

v.

MIGUEL SALAS ROMERO, *ET ALS*.
Demandados-Peticionarios

Núm. KLCE-05-00765

San Juan, Puerto Rico, a 19 de octubre de 2005

Panel integrado por su Presidenta, la Juez Pesante Martínez,
la Juez Feliciano Acevedo y el Juez Salas Soler

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

La parte demandada-peticionaria, Isabel Delgado, comparece ante nos mediante escrito en solicitud de expedición de auto de *certiorari*. En su escrito, la parte peticionaria solicitó la revocación de cierta resolución dictada por el Tribunal de Primera Instancia, Sala de Fajardo.

Mediante el referido dictamen, el TPI permitió enmendar la demanda que originalmente se trabó en contra de la Sra. Isabel Delgado y su difunto esposo, Miguel Salas Romero. Además de lo anterior, se ordenó la expedición de emplazamientos. La referida orden tuvo como resultado la acumulación como demandado del representante legal de la parte peticionaria, el Lcdo. Juan Manuel Adorno Peña. Respecto a lo anterior, la parte peticionaria, por conducto de su representante legal, solicitó en su escrito que se resuelva que no procede la acumulación del letrado como parte demandada.

Luego de realizar un análisis ponderado del expediente de este caso, concluimos que procede denegar la solicitud de la parte peticionario.

### I

La controversia de autos tiene su origen en fecha muy anterior a la de la demanda trabada entre las partes de epígrafe. Por ello, reconstruimos brevemente los intricados hechos e incidentes procesales de mayor relevancia que arrojan luz a la controversia de autos.

La controversia entre las partes de este caso inició con dos acciones en cobro de dinero presentadas por la peticionaria Isabel Delgado, su difunto esposo Miguel Salas Romero y la sociedad legal de bienes gananciales compuesta por ambos (SLBG) en contra del Sr. Santiago García García (hoy tercero demandado), su fallecida

esposa y la SLBG compuesta entre ellos. Los casos fueron consolidados. Las partes llegaron a un acuerdo transaccional que fue acogido por el tribunal mediante sentencia disponiéndose así de ambos casos. Las estipulaciones crearon ciertas obligaciones entre las partes aludidas, y éstas, envolvían la finca que hasta hoy es objeto de la controversia (finca cuya titularidad se adjudicaba entonces al hoy tercero demandado).

Se pactó que de incumplir el hoy tercero demandado con lo estipulado, la parte aquí peticionaria podría, entre otras opciones, solicitar la venta judicial *"de la finca total"* del hoy tercero demandado para así satisfacer el pago de la deuda que tenía este último para con la primera. Además, las partes estipularon que el hoy tercero demandado, Santiago García, se abstendría de gravar o disponer en forma alguna de la referida finca. Ante el incumplimiento del hoy tercero demandado, el tribunal instó a la parte aquí peticionaria (para entonces demandante) a que llevara a cabo las gestiones conducentes a la venta judicial del inmueble.

Conforme a los documentos de autos, se publicaron los edictos correspondientes y se llevó a cabo la subasta pública. La buena pro se le adjudicó a la hoy parte peticionaria. Lo anterior consta en Resolución dictada por el Tribunal de Primera Instancia el 5 de junio de 2001. Allí además se indicó que del récord judicial se desprendía claramente que los hoy terceros demandados siempre fueron notificados de todos los asuntos de la Ejecución de Sentencia, y que por tanto, era incorrecta su contención respecto a alegados defectos de notificación. El tribunal concluyó entonces que el abogado de los hoy terceros demandados fue notificado de todo lo concerniente al proceso de venta judicial.

Por razón de la referida venta judicial, la parte peticionaria obtuvo la titularidad de la finca involucrada en esta controversia. En virtud de dicha titularidad, aquélla gestionó un proceso de lanzamiento o desalojo en contra de los aquí terceros demandados, Santiago García, y los hijos de éste (aquí demandantes- recurridos) que permanecían en la finca. Estos últimos se opusieron a la orden de desalojo que se había expedido en su contra. Ante dicha oposición, se paralizó el desalojo, y posteriormente, se celebró vista judicial. En dicha vista se acordó que los hoy terceros demandados se comprometían a comprar la finca. Para ello, entregarían una partida como adelanto del pago dentro de cierto término, o en su defecto, se daría paso al lanzamiento.

La parte peticionaria (entonces demandante) solicitó la expedición de una nueva orden de lanzamiento tras el incumplimiento con el segundo acuerdo de los hoy terceros demandados. Estos últimos, ahora bajo la representación del Lcdo. Marvin Díaz Ferrer (al día de hoy su abogado de récord), se opusieron igualmente al lanzamiento. Plantearon aquí defectos de notificación del proceso de venta judicial que culminó con la adjudicación a la parte peticionaria del inmueble aludido antes. Los argumentos de estos últimos no tuvieron éxito y se ordenó el lanzamiento.

Posteriormente, los aquí demandante-recurridos, familiares de los terceros demandados, solicitaron intervención en el proceso. Estos estaban igualmente representados por el Lcdo. Marvin Díaz Ferrer. Su solicitud fue infructuosa, ya que se halló que no fue oportuna la misma. Esta decisión fue sostenida por este Foro Apelativo, y la queja tampoco prosperó ante el Tribunal Supremo.

Entonces, los demandantes-recurridos presentaron su demanda en contra de la parte peticionaria, Isabel Delgado y su difunto esposo (antes demandantes). En síntesis, éstos han alegado que son edificadores de buena fe de ciertas estructuras sitas en la finca que adquirió la peticionaria por venta judicial y que son condueños de la finca. Estos han solicitado ser resarcidos por el valor de las referidas edificaciones y por las angustias mentales que alegan haber sufrido tras ser despojados de sus residencias.

Además de lo anterior, cabe señalar que los demandantes-recurridos han solicitado la enmienda de su demanda al menos en dos ocasiones. En la primera para incluir a los sucesores del difunto, Sr. Miguel Salas Romero, y en la segunda, para acumular como demandado al Lcdo. Adorno Peña, representante legal de la parte peticionaria. Aquéllos han solicitado la acumulación del letrado en el entendido de que es co-causante de los

daños que reclamaron a los demandados originales. Según éstos, el Lcdo. Adorno gestionó y activamente promovió de manera ilegal el lanzamiento al que estuvieron sujetos.

Conviene señalar, además, que surge del expediente que se han realizado varios trámites a los fines de dilucidar; primero, sendas solicitudes de descalificación tanto del abogado de la parte peticionaria como el de la parte recurrida; y segundo, la solicitud de que se apruebe la segunda demanda enmendada y se expidan los correspondientes emplazamientos. Finalmente, luego de varias incidencias procesales, la enmienda a la demanda fue aprobada, dejada sin efecto, pero vuelta a poner en vigor por el dictamen recurrido.

En lo que atañe a las solicitudes de descalificación, ha estado en tela de juicio si el Lcdo. Adorno Peña, al haber sido acumulado como demandado, debe ser descalificado como abogado de la parte peticionaria. Ello, en vista del conflicto de intereses que puede resultar por estar en la posición de defender sus intereses y los de su representada. El asunto ha sido refraseado por parte del abogado de la peticionaria para cuestionar precisamente que haya sido acumulado como demandado con la intención de dejar desprovista a la parte peticionaria de su representación legal.

Examinado el trasfondo fáctico de la controversia de autos, analizamos el derecho aplicable.

## II

La Regla 17.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 17.1, establece que *"[c]ualquier número de personas podrá acumularse en un pleito, como demandantes o como demandados, si reclamaren o se reclamare contra ellas conjunta, separadamente, o en la alternativa, cualquier derecho a un remedio relacionado con, o que surja del mismo acto, omisión, evento, o serie de actos, omisiones o eventos, siempre que cualquier cuestión de hecho o de derecho, común a todas, hubiere de surgir en el pleito"*. Añade esta disposición que no será requisito que un demandante o demandado tenga interés en obtener o defenderse de todo el remedio solicitado; y además, que puede dictarse sentencia a favor de uno o más demandantes de acuerdo con sus respectivos derechos a un remedio y contra uno o más demandados de acuerdo con sus respectivas responsabilidades.

Por otra parte, la Regla 17.2 dispone que el tribunal podrá dictar las órdenes que crea oportunas para evitar dificultades, dilación o gastos a una parte, debido a la inclusión de otra contra quien nada reclama y quien nada reclama contra ella. Se indica, por ejemplo, que se podrá ordenar juicio por separado o dictar cualquiera otra providencia que evite dilación o perjuicio; y además, se podrá dictar sentencia sobre una reclamación de o contra una o más partes de acuerdo con lo dispuesto por la Regla 43.5 de las de Procedimiento Civil.

Por su parte, la Regla 18 dicta que la indebida acumulación de partes no constituirá motivo para desestimar un pleito. De hecho, establece que cualquier parte podrá ser adicionada o eliminada por orden del tribunal, a iniciativa de éste, o a moción de parte en cualquier estado del procedimiento, bajo las condiciones que fueren justas. Así también, se provee para que cualquier reclamación contra una parte puede ser separada para proseguir independientemente.

En lo que respecta a los objetivos, particularmente de la Regla 17.1, y sobre la acumulación de demandados a los pleitos, en *Carrasquillo v. Tribunal Superior*, 87 D.P.R. 661, 666-667 (1963), se expresó:

*"La Regla 17 es de naturaleza procesal. Su propósito es eliminar obstáculos a la acumulación sin afectar los derechos sustantivos de las partes. Lo es también el promover la conveniencia en el juicio, el evitar multiplicidad de pleitos y expeditar la disposición final de la litigación mediante la inclusión en un pleito de todas las partes directamente interesadas en la controversia a pesar de las objeciones técnicas previamente existentes en muchas situaciones; y, por último, reconoce la economía de un procedimiento bajo el cual varias reclamaciones que surgen del mismo suceso puedan ser vistas conjuntamente evitando así la repetición de la*

*evidencia relacionada con hechos comunes a todas las reclamaciones. Por estas razones, la regla en cuestión debe interpretarse y aplicarse liberalmente en la práctica cuando dicha aplicación sea consistente con la conveniencia en la disposición de las acciones."* (Cita omitida).

Para que proceda la acumulación de demandados bajo la Regla 17.1 hay que cumplir con dos requisitos: en primer lugar, reclamar en su contra un derecho a un remedio relacionado con, o que surja de la misma transacción, suceso, o serie de transacciones o sucesos y, en segundo lugar, debe surgir en el pleito alguna cuestión de hecho o de derecho común a todas. No es requisito que un demandado tenga interés en defenderse de todo el remedio solicitado. La regla dispone además que puede dictarse sentencia contra uno o más demandados de acuerdo con sus respectivas responsabilidades.

### III

De otra parte, la Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, provee lo pertinente a la concesión de costas y honorarios de abogados:

*"(a) Su concesión. Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe rembolsar a otro.*

*[...]*

*(d) Honorarios de abogado. En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."*

Por su parte, la Regla 44.3 (b) provee lo relacionado a la imposición del pago de intereses por temeridad:

*"El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía-de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipio, agencias, instrumentalidades o funcionarios en su carácter oficial."* ·

En *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 717 (1987), se indica que la imposición de honorarios de abogado es discrecional; no obstante, la Regla 44.1(d) de Procedimiento Civil es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado.

El propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Id.* a la pág. 718. La acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar; que lo prolongue innecesariamente; o que produzca la necesidad de que otra parte incurra en gestiones evitables. *Id.* en las páginas 718-719.

Por otro lado, la imposición de intereses es de naturaleza idéntica a la imposición de honorarios de abogado. Ambos proceden cuando la parte perdidosa ha sido temeraria; y además, persiguen idénticos propósitos, a saber:

disuadir la litigación y alentar las transacciones, mediante sanciones a la parte temeraria que compensen los perjuicios económicos y las molestias, producto de su temeridad, sufridos por la otra parte. Al igual que con los honorarios de abogado, si el tribunal concluye que una parte ha sido temeraria la imposición de intereses es imperativa al amparo de la Regla 44.3 (b) de las de Procedimiento Civil. *Id.* en las páginas 722-723.

Valga indicar, además, que para resolver si una parte ha sido temeraria o no, un tribunal puede tomar en consideración la conducta observada por las partes incluso en las etapas previas a presentarse la acción judicial y antes de ser emplazada la parte demandada. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983).

## IV

De otro modo, el conflicto de intereses está regulado por el Canon 21 del Código de Ética Profesional, 4 L. P.R.A. Ap. IX, C.21. Dicho canon parte de la premisa de que todo abogado tiene un deber de *"lealtad completa"* con su cliente. *In re: Belén Trujillo*, 126 D.P.R. 743 (1990). El referido canon dispone:

*"El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.*

*No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.*

*La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de este."*

Tradicionalmente, se ha determinado la existencia de un conflicto de intereses que requiere la imposición de sanciones disciplinarias cuando hay alguna circunstancia que impide la representación libre y adecuada por parte del abogado y vulnera la lealtad absoluta que le debe todo abogado a su cliente. *In re: Belén Trujillo*, *supra*, a la pág. 753.

Por otro lado, dentro de la definición general de conflicto de intereses, se manifiestan dos (2) vertientes: la primera, cuando se trata con el denominado *"conflicto de intereses personales"*, y la segunda, aquella conocida como *"conflicto de obligaciones"*. La primera vertiente de conflicto de interés se consuma cuando los intereses personales del abogado imposibilitan la representación adecuada del cliente, al chocar con el deber de lealtad hacia éste. En un caso donde se manifieste este tipo de conflicto, el abogado está frente a un dilema: su deber de representar al cliente de manera efectiva puede ser incompatible con la defensa de sus propios intereses. Cuando esto ocurre, la representación adecuada conlleva, en la mayoría de los casos, perjudicar los intereses personales del abogado. *Id.*

Así también se ha destacado que para que pueda determinarse que existe un conflicto de interés en cualquiera de las vertientes antes mencionadas, se requiere la existencia de una relación abogado-cliente. La ausencia de esta no permite la imposición de sanciones disciplinarias por violación al citado Canon 21. *Id.* a la pág. 754. Sobre este particular, conviene señalarse que se ha definido la relación abogado-cliente como una relación múltiple, compuesta de las diferentes funciones que desempeña un abogado. Cada una de estas crea

una relación abogado-cliente diferente y particular con un grado de responsabilidad variable. *Id.* a la pág. 755. Así por ejemplo, un abogado puede desempeñarse como consejero o defensor. En el descargo de estas funciones, responde el abogado a los códigos de ética. *Id.*

La función de consejero es la justificación del deber de confidencialidad, el cliente necesita estar seguro de que existe una relación confidencial para poder revelar aquella información necesaria para obtener un buen consejo legal. La función de defensor en la litigación es la justificación primordial al deber de evitar los conflictos de intereses. *Id.*

Es menester añadir que se ha hecho hincapié en la necesidad de evitar conflictos de intereses potenciales. Sobre este particular se abundó en *In re: Ángel S. Bonilla Rodríguez*, **2001 J.T.S. 111**, donde se expresó que como regla general, los abogados no sólo deben evitar el conflicto de intereses actual, sino también el potencial. Se añadió que para imponer al abogado la obligación de renunciar a la representación del cliente afectado, el conflicto no tiene que estar establecido claramente; basta con que el conflicto sea potencial. Además, se indicó que la situación no varía por el hecho de que alguien crea que dicha posibilidad sea o no "*altamente especulativa*". Así pues, concluye el Tribunal Supremo que el Canon 21 impone al abogado un deber de lealtad absoluta al ejercer un juicio independiente y desligado a sus intereses personales.

Abonado a lo anterior, precisa traer a colación que el Canon 38 de Ética Profesional, impone a todo abogado el deber ineludible de esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales, y debe evitar hasta la apariencia de conducta profesional impropia. Es obligación de todo abogado evitar toda apariencia de impropiedad; esto es, en caso de duda sobre la posibilidad de un conflicto de intereses, el abogado deberá renunciar a la representación legal del cliente afectado o potencialmente afectado. *Id.*

El abogado tiene que ser escrupuloso en el cumplimiento de las normas de ética profesional, y debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de impropiedad. Es por ello que a todo abogado le ampara la obligación de precaver el conflicto de intereses, tanto en la realidad como en la apariencia. Por ende, la apariencia de impropiedad será utilizada para resolver cualesquiera dudas que surjan sobre posible conflicto de intereses, a favor de la descalificación. *Id.*

En lo que atañe a los procesos de descalificación, éstos no constituyen de por sí acciones disciplinarias sujetas a la jurisdicción original y exclusiva del Tribunal Supremo. Todo lo contrario, los tribunales de primera instancia, en el ejercicio de su poder inherente de supervisar y controlar la conducta de los abogados que postulan ante sí, pueden entender y resolver mociones de descalificación de abogados, cuando las mismas surgen como cuestiones colaterales en casos pendientes ante sí, sin menoscabar el poder exclusivo del Tribunal Supremo para entender en acciones disciplinarias contra abogados. Lo anterior, en vista de que la descalificación se emplea como una medida preventiva para evitar posibles violaciones a los Cánones de Ética. *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. 633 (1988).

## V

Luego de examinar detenidamente el expediente de autos, y en particular, las alegaciones esgrimidas por todas las partes involucradas en el presente caso, concluimos que procede denegar la solicitud de la parte peticionaria. Avalamos la orden del tribunal de instancia que permitió la acumulación como demandado del abogado de la parte peticionaria (Lcdo. Adorno Peña). No sólo ello, sino que en virtud de esta determinación, concluimos que es ineludible la descalificación del referido letrado.

Aclaramos que tomamos cuenta de que la solicitada acumulación como demandado del Lcdo. Adorno Peña, puede ser, aunque no decimos que así sea, un ardid o subterfugio de la parte demandante-recurrida, o al menos, parte de una estrategia que puede incidir en el trámite con efectos perniciosos para la parte peticionaria. Esta

última, quedaría despojada del representante legal que le ha asistido desde el comienzo de esta controversia, que según advertimos, se originó por hechos que antecedieron a la demanda presentada por los aquí recurridos. No obstante, ni la parte peticionaria ni el Lcdo. Adorno Peña quedan huérfanos de recursos o de remedios en caso de sufrir perjuicio por la acumulación, y correlativa descalificación, del letrado.

Primero hay que destacar que la acumulación como demandado del Lcdo. Adorno Peña no se escapa del hecho de que la ley permite la acumulación de cualquier número de personas a un pleito, como demandante o como demandado; y además, que procede la acumulación de partes para evitar la multiplicidad de pleitos así como para expeditar la disposición final de las controversias, ello, a pesar de las objeciones técnicas que puedan levantarse. De hecho, aun en el supuesto de que se determine que estuvo indebidamente acumulado, ello no sería óbice para la desestimación del pleito.

En el caso ante nos, las reclamaciones y los remedios solicitados contra la parte demandada-peticionaria, así como contra el Lcdo. Adorno Peña, surgen de la misma secuencia de eventos, a saber, los procesos judiciales que culminaron con el desalojo o lanzamiento de los demandantes-recurridos de la finca en controversia. Así también, surgen cuestiones de hechos y de derecho comunes a todos los demandados (incluyendo al referido letrado). Por tanto, las circunstancias fácticas de este caso satisfacen los requisitos para que proceda la *"acumulación de demandado"* al pleito de acuerdo a la doctrina aplicable.

No obstante lo anterior, dejamos claro que no debe entenderse que con avalar la acumulación del Lcdo. Adorno como demandado, estamos expresando juicio alguno sobre la suficiencia o los méritos de las reclamaciones alegadas en su contra. Todo lo contrario, la parte demandante-recurrida tendrá ahora la obligación de demostrar al tribunal de instancia la procedencia de las imputaciones que levantó en contra del letrado. En su defecto, podría estar sujeto a que se le penalice con el pago de costas, honorarios e intereses por temeridad si no prevalece en su contención. Lo anterior, en el supuesto de que el tribunal determine que la parte demandante-recurrida incurrió en temeridad o frivolidad en sus planteamientos contra el letrado tras servirse del proceso en una actitud obstinada y desprovista de fundamentos, obligando a aquél a incurrir en gastos, trabajo e inconveniencias evitables. Este remedio, de no prevalecer la parte demandante-recurrida, tendría el efecto de compensar parte de los perjuicios económicos y las molestias que sufriera el Lcdo. Adorno Peña. Todo ello, sin soslayar que el letrado y la parte peticionaria podrían tener acceso a otros remedios, como lo sería inclusive, una reclamación en daños mediante pleito independiente. Como indicáramos anteriormente, el tribunal podría dictar cualquier providencia que evite las posibles dificultades o perjuicios que provoquen la acumulación del Lcdo. Adorno como parte.

Por otro lado, acumulado como demandado el Lcdo. Adorno Peña, procede consiguientemente su descalificación. Lo anterior se justifica en vista de que en su relación abogado-cliente con la parte peticionaria (también demandada), el deber de lealtad para con su representada podría quedar comprometido evitando así que pueda descargar sus funciones como defensor con un juicio independiente y desligado a sus intereses personales. En este caso, la representación efectiva de los intereses de su representada pueden ser incompatibles con los suyos. Lo anterior, respondería a un supuesto del denominado conflicto de interés personal, lo cual podría incluso desembocar en una acción disciplinaria.

Recordemos que no tiene que determinarse categóricamente que el Lcdo. Adorno Peña esté encarando un conflicto de interés actual para que deje de ostentar la representación de la parte peticionaria. Según la doctrina, basta con que el conflicto de interés al menos sea potencial. Así pues, procede que se le descalifique como medida preventiva para evitar posibles violaciones al Canon 21, e incluso al Canon 38 de Ética Profesional. Aunque a juicio del letrado, el no oponerse a la descalificación resulte en un sacrificio personal, así se lo exige el referido Canon 38 al establecer que el abogado debe cuidarse de que sus actuaciones no den margen siquiera a la más leve sospecha de impropiedad. Como es sabido, todo abogado está obligado a precaver el conflicto de intereses tanto en la realidad como en la apariencia; y además, que la mera apariencia de impropiedad propicia

que se resuelva cualquier duda sobre posible conflicto de interés a favor de la descalificación.

Conforme a lo anteriormente expuesto, no expedimos el auto de *certiorari* solicitado. Ello tiene el efecto de sostener la determinación del TPI de permitir acumular al Lcdo. Juan Manuel Adorno Peña como demandado, y por ende, descalificarle como representante legal de la parte demandada-peticionaria.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones